USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/6/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK METZLER, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

PURE ENERGY USA LLC,

Defendant.

21-CV-9798 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Mark Metzler brings this putative class action against Defendant Pure Energy USA LLC ("Pure Energy") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"). In the First Amended Complaint ("FAC"), Plaintiff, individually and on behalf of a potential class, alleges that Defendant violated the TCPA by making unsolicited calls to Plaintiff's and potential class members' mobile phones using an artificial or prerecorded voice without permission. *See* FAC ¶ 4, Dkt. 23.[1] Defendant moves to dismiss the FAC under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. *See generally* Mot., Dkt. 25. For the following reasons, Pure Energy's Motion to Dismiss is GRANTED.

[1] Plaintiff originally filed the Complaint on November 23, 2021. Dkt. 1. On February 2, 2022, Defendant moved to dismiss. Dkt. 20. Plaintiff amended the complaint on February 7, 2022, and the Court denied Defendant's motion to dismiss as moot. Dkt. 24. Defendant then moved to dismiss the FAC. *See* Dkt. 25. The Court heard oral argument on Defendant's Motion on December 16, 2022. *See* Order, Dkt. 31. Discovery has been stayed since Defendant filed its first motion to dismiss. *See* Dkt. 22.

## I. BACKGROUND[2]

Plaintiff, a resident of Philadelphia, Pennsylvania, brings this purported class action complaint against Defendant Pure Energy LLC, a solar energy company that converts homes and businesses to solar energy and other types of alternative energy. FAC ¶ 5. Plaintiff's claims arise from Defendant's alleged telemarketing campaign that involved the transmission of "ringless voicemails" to persuade energy customers to switch energy providers. *Id.* ¶¶ 3–5, 32.

On September 23, 2021, Plaintiff received a voicemail on his cell phone. *Id.* ¶ 29. According to the FAC, the voicemail was a "ringless voicemail," meaning a voice message that was transmitted directly to Plaintiff's voicemail box without the telephone ringing, *see id.*; according to the original complaint, the telephone rang but the call went to voicemail when Plaintiff did not answer, Compl. ¶¶ 25–26, Dkt. 1. "When Plaintiff listened to the voicemail, he was easily able to determine that it was a prerecorded message." FAC ¶ 33. Plaintiff provided the following transcription of the message:

> Yes, this is Angela Coleman, I have your account information here indicating that the customer choice program is expiring on your PECO[3] account, since we haven't received a response to the correspondence. Please give me a call at 610-673-0477. Thank you.

*Id.* ¶ 30.

According to Plaintiff, the call to him originated from telephone number 267-553-6297, which Plaintiff alleges is "owned and/or operated by or on behalf of Defendant." *Id.* ¶ 42.

---

2 The facts are taken from the FAC. At this stage in the litigation, the Court assumes that all well-pled facts alleged in the FAC are true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

3 Plaintiff alleges that Defendant Pure Energy "refers to its utility services as 'PECO' in Pennsylvania." FAC ¶ 38. Defendant disclaims any connection to "PECO." *See* Def. Mem. of Law at 11. The Court agrees with Defendant that Plaintiff has "gross[ly] mischaracteriz[ed]" the information on Defendant's website; the term PECO appears on Defendant's website in a column that lists utilities to whom Defendant appears to supply electricity, a list that also includes Con Edison and Duke Power. Other basic research confirms that PECO is a utility company, formerly known as Philadelphia Energy Company, that is currently a subsidiary of Exelon. *See* www.peco.com/aboutus/pages/companyinformation.

Several days after receiving the call, Plaintiff called the number provided in the voicemail "to ascertain the identity of the spam caller." *Id.* ¶ 34. Plaintiff was then connected to an agent who identified herself as a Pure Energy USA representative; the agent "began enrolling Plaintiff" in Defendant's services and informed Plaintiff that "his new energy supplier will be Pure Energy USA." *Id.* ¶¶ 34–36.

Plaintiff, the sole user and subscriber of the cell telephone that received the alleged "unsolicited prerecorded call," never consented to be contacted by Defendant. *Id.* ¶¶ 45–46. Plaintiff alleges that the ringless voicemail caused him "actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion." *Id.* ¶ 47. Plaintiff allegedly spent "fifteen minutes reviewing Defendant's unwanted message" because he "had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message." *Id.* ¶ 48. The voicemail "took up memory on Plaintiff's cellular phone," the "cumulative effect" of which "poses a real risk of ultimately rendering the phone unusable for voice messaging purposes" and "slow[ing] cell phone performance" by consuming space on the phone's memory. *Id.* ¶¶ 49–50.[4]

According to Plaintiff, Defendant has a "practice of placing unsolicited ringless voicemails," like the one Plaintiff received, "to many individuals that [*sic*] never consented to be contacted on their telephone." *Id.* ¶ 40. Plaintiff alleges, upon information and belief, that Defendant "has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent." *Id.* ¶ 54. To corroborate these factually bare conclusions, the FAC directs the Court to

[4] Although the FAC repeatedly references "voice messages," *see* FAC ¶ 48–50, it alleges only a single unsolicited voicemail from Defendant, the memory requirements for which would be negligible.

a website on which, according to Plaintiff, other individuals "voiced their frustration" over having received "unwanted, unconsented to, and harassing calls" from Defendant that were associated with the telephone number 610-673-0477.[5]  *Id.* ¶ 41.

Plaintiff alleges violations of Section 227(b)(1)(A) of the TCPA (Count 1), *id.* ¶¶ 63–70, and for "knowing and/or willful" violations of Section 227(b)(3) of the TCPA (Count 2), *id.* ¶¶ 71–75.  Plaintiff seeks actual and statutory damages as well as declaratory and injunctive relief.  *See id.*  And, because Defendant "knew that it did not have prior express consent to make these calls, and knew or should have known that it was using an artificial or prerecorded voice," *id.* ¶ 68, Plaintiff alleges that he and the putative class are entitled to treble damages, in addition to actual and statutory damages, *id.* ¶¶ 69–70, 72–75.

Defendant moves to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to allege Article III standing pursuant to 12(b)(1).  Def. Mem. of Law at 6–8.

---

[5]  The URL provided in the FAC (https://www.numberguru.com/phone/610/673/0477) links to a website that includes various posts purportedly complaining about the receipt of unsolicited voicemails from the call-back number that was provided in the voicemail Plaintiff received.  *See* FAC ¶ 41.  The FAC provides a sample of such comments, several of which identify an "Angela Coleman" as having left a message regarding PECO (sometimes spelled "pico"); other comments describe a message identical to the one transcribed in the FAC, down to the inclusion of two "um"s.  *See id.*  As of December 2, 2022, there were 27 comments posted at the URL provided in the FAC.  While that figure reflects more complaints than just Plaintiff's, it does not provide support for his allegations that there have been "thousands" of unsolicited calls.  *See* FAC ¶ 53.

## II.  DISCUSSION

### A.  Defendant's Motion to Dismiss for Failure to Allege Subject Matter Jurisdiction Is Denied[6]

Defendant moves to dismiss on the grounds that Plaintiff has failed to "plead sufficient facts demonstrating the essential elements of causation (a.k.a. 'traceability') and redressability for Article III standing purposes." Def. Mem. of Law at 20. Defendant also contends that Plaintiff lacks standing to pursue injunctive relief. *Id.* at 21–22; Def. Reply at 10. "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

#### 1.  Plaintiff Has Standing to Seek Damages

Defendant primarily argues that Plaintiff has failed to establish a causal connection between the voicemail and Pure Energy, as opposed to some other third party, and thus lacks Article III standing. Def. Mem. of Law at 20–21. The threshold for establishing causation at the pleading stage is modest, as there need only be a "substantial likelihood" that Defendant caused Plaintiff's harm. *Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, 2017 WL 3597880, at *6 (D. Conn. Aug. 21, 2017) (quoting *DMJ Assocs., L.L.C. v. Capasso*, 288 F. Supp. 2d 262, 272 (E.D.N.Y. 2003)); *see also Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) ("The

---

[6]  Although Defendant's 12(b)(1) motion relies almost exclusively on the arguments made in its 12(b)(6) motion — *i.e.*, that Plaintiff has failed adequately to state a claim that Defendant is directly liable for violating the TCPA — this opinion first addresses the issue of standing given the Court's "independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citation omitted).

requirement that a complaint allege an injury that is fairly traceable to defendants' conduct for purposes of constitutional standing is a lesser burden than the requirement that it show proximate cause."); *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006) ("Even harms that flow indirectly from the action in question can be said to be fairly traceable to that action for standing purposes.").

As more fully discussed below, drawing all reasonable inferences from well-pled facts in Plaintiff's favor, Plaintiff has adequately alleged an injury that is fairly traceable to Defendant: namely, that he received an unsolicited telephone call from Defendant, and upon returning that call, he reached a representative purporting to sell the services of Pure Energy. FAC ¶¶ 29–36. Those facts are more than sufficient to show causation for Article III standing purposes. *See, e.g.*, *Bank v. GoHealth, LLC*, 2021 WL 1884671, at *9 (E.D.N.Y. May 11, 2021) ("Plaintiff plausibly alleges that his injury is fairly traceable to Defendant's conduct because Plaintiff was eventually transferred to a licensed agent of Defendant and while Plaintiff was on hold to be transferred to Defendant's agent, an automated message instructed Plaintiff to call a phone number associated with Defendant to be placed on Defendant's do-not-call list."), *aff'd*, 2022 WL 1132503 (2d Cir. Apr. 18, 2022).

Raising the same arguments as in its challenge to causation, Defendant also argues that Plaintiff has failed to show how "his claim can be adequately redressed by Pure Energy." Def. Mem. of Law at 21. To satisfy the redressability prong of Article III standing, Plaintiff must establish that it is likely, and not merely speculative, that his "injury will be remedied by the relief [he] seeks in bringing suit." *Sprint Comms. Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008) (citation omitted); *see Maddox*, 19 F.4th at 62. Defendant's argument that Plaintiff has failed to "explain how monetary or injunctive relief . . . will redress alleged injuries caused to him by unidentified third parties," Def. Mem. of Law at 3, 20–21, is unavailing: as discussed

above, Plaintiff has adequately alleged that his injury was caused by a call from or on behalf of Pure Energy. Thus, the imposition of statutory damages against Pure Energy will adequately redress his injury.

**2. Plaintiff Has Standing to Seek Injunctive Relief**

Defendant also argues that Plaintiff lacks standing to obtain an injunction against Defendant, as injunctive relief requires Plaintiff to establish "continuing, present adverse effects" and that Plaintiff "is likely to be harmed again in the future in a similar way." *See* Def. Mem. of Law at 21–22. Because Plaintiff only alleges that he received a single call, Defendant argues that Plaintiff has not shown a "continuing or possible future injury" sufficient to confer standing to seek injunctive relief. *Id.* at 22. Plaintiff argues that he does not seek injunctive relief as a standalone cause of action, but rather as a remedy that is expressly provided by the TCPA, thus distinguishing this case from those cited by Defendant. *See* Pl. Opp. at 14–15.

Although the standard for awarding injunctive relief under the TCPA has not been firmly decided in this circuit,[7] assuming the truth of Plaintiff's allegations that others have complained about having received similar unsolicited calls from Defendant, the Court is satisfied that Plaintiff has sufficiently alleged that he and the putative class members are "likely to be harmed again in the future in a similar way." *See* Def. Mem. of Law at 22 (quoting *Nicosia v. Amazon*, 834 F.3d 220, 239 (2d Cir. 2016)). In any event, at this stage of the litigation, dismissing

[7] At least one court in this circuit has held that a request for an injunction under the TCPA should be denied absent "a showing that there is a reasonable likelihood" of future violations, even though the TCPA provides a private right of action to enjoin violations. *See Bank v. Caribbean Cruise Line, Inc.*, 2014 WL 1883586, at *2 (E.D.N.Y. May 12, 2014), *vacated and remanded on other grounds*, 606 F. App'x 28 (2d Cir. 2015) (summary order). In declining to issue an injunction, the district court in *Bank* stated that the Second Circuit requires a showing of "a reasonable likelihood" of a future violation even "in the context of a statutory injunction." *Id.* (quoting *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)). On appeal, the Second Circuit found that the standard articulated by the district court was not subject to review because a settlement between the parties had mooted the case. *Bank*, 606 F. App'x at 30 ("Accordingly, the interesting question Bank now raises about the proper standard for awarding injunctive relief under the TCPA has been rendered purely academic and thus not subject to our review.").

Plaintiff's request for injunctive relief would be premature. *See, e.g.*, *Gutierrez v. Fla. Advert. & Mktg. Corp.*, 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019) ("[A] claim for a statutory violation[] . . . is all that is required to request injunctive relief in a complaint," but, "of course, the Court can revisit the issue at summary judgment . . . ."). Accordingly, Plaintiff has adequately alleged that he has Article III standing to seek an injunction.[8]

**B. Defendant's Motion to Dismiss for Failure to State a Claim Is Granted**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to

---

[8] Notwithstanding Defendant's reservation of rights to dispute whether Plaintiff has sufficiently alleged an injury, *see* Def. Mem. of Law at 3 n.3, for the avoidance of doubt the Court also finds that, at this stage, the FAC meets the injury-in-fact prong of Article III standing. The Second Circuit has held that the "'nuisance and privacy invasion' of receiving unsolicited text messages is a sufficient injury to allege standing under the TCPA." *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 476 (2d Cir. 2021) (citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) ("[T]he nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA[, and] history confirms that causes of action to remedy such injuries were traditionally regarded as providing bases for lawsuits in English or American courts.")); *see also Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926, *7 (S.D.N.Y. Aug. 1, 2017) (noting that the Second Circuit has held that a plaintiff asserting a TCPA claim had adequately alleged standing by alleging that "the defendant 'left a prerecorded voicemail message, to which plaintiff later listened, on an answering device in the place where plaintiff resided and to which he had legitimate access'") (quoting *Leyse v. Lifetime Entertain. Svcs., LLC*, 2017 WL 659894, *1 (2d Cir. 2017) (summary order))). The Court finds that the "nuisance and privacy invasion" of unsolicited telephone calls is likewise a sufficient injury under the TCPA; Plaintiff alleges that unsolicited voicemails can clog voicemail space and drain cell phone resources. *See* FAC ¶¶ 47–49. Plaintiff has thus alleged adequately an injury-in-fact.

That said, and not to minimize the annoyance of unwanted telephone calls, the Court finds implausible Plaintiff's allegation that he "wasted fifteen minutes reviewing Defendant's unwanted message." FAC ¶ 48. The message contained 43 words (counting "um" twice). Even if Plaintiff decided to both read the voicemail transcript and then listen to it, he could not possibly have spent more than a few minutes in total "reviewing" the unwanted message.

relief above the speculative level." *Keiler v. Harlequin Enters., Inc.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in *Iqbal*). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### 1. Plaintiff Has Not Adequately Pled that Pure Energy Is Directly Liable Under Section 227(b)(1)(A)(iii) of the TCPA

In relevant part, the TCPA makes it unlawful for anyone to make any call using an artificial or prerecorded voice to a cellular telephone without prior consent. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls made in violation of 47 U.S.C. § 227(b). 47 U.S.C. § 227(b)(3).

Defendant argues that Plaintiff has failed adequately to plead that Pure Energy is directly liable under the TCPA because Plaintiff "does not allege with any factual basis that Pure Energy itself — as opposed to some third party — physically placed the call at issue." Def. Mem. of Law at 11 (emphases in original); *see also* Def. Reply at 1–2. More specifically, Defendant argues that the FAC fails plausibly to allege that Pure Energy initiated the call because the voicemail message Plaintiff received only identified "PECO," not Pure Energy, and did not

"offer[] him any Pure Energy products or services." Def. Mem. of Law at 11. The Court agrees that Plaintiff has not adequately alleged that Pure Energy placed the call.[9]

Plaintiff alleges that Defendant owns or operates the telephone number from which the offending call originated. FAC ¶¶ 42–43. That allegation is entirely conclusory. The screen shot of Plaintiff's telephone, *id.* ¶ 29, adequately documents that the voicemail originated from 267-553-6297, but there are no further allegations that associate that number with any subscriber, let alone with Pure Energy. The FAC simply contains no factual allegations supporting Plaintiff's bald conclusion that the number from which the voicemail originated is "owned/operated by or on behalf of Defendant."

Plaintiff further alleges that, although the voicemail message did not identify Pure Energy by name, Pure Energy has, at least on its website, referred to its services in Pennsylvania (where Plaintiff resides) as "PECO." *Id.* ¶ 38.[10] As discussed in note 3, *supra*, that allegation is not supported by the website. *See Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 410 (S.D.N.Y. 2018) (noting that a website cited in an amended complaint is "effectively incorporated into it"), *aff'd*, 757 F. App'x 35 (2d Cir. 2018); *D'Amato v. Starr*, 2007 WL 895787, *1 (E.D.N.Y. Mar. 22, 2007) (rejecting allegations purportedly supported by "the websites cited [in the complaint], and which are therefore incorporated in the complaint," as the websites "do not bear out the allegations"). There is no indication on the website that Defendant

---

9 Plaintiff has expressly disclaimed that he is pursuing a claim of vicarious liability. Pl. Opp. at 9; Tr. 5:9-10. The Court obtained a copy of the hearing transcript for purposes of this Opinion. Because neither party ordered a copy, the transcript has not been docketed.

10 Plaintiff's Opposition brief also cites to what Plaintiff describes as a 2020 quarterly filing made by Pure Energy to a Pennsylvania regulatory agency in which Defendant purportedly listed PECO Energy Co. as an "Electric Distribution Company (EDC) applicable to [the] company's retail sales." *See* Pl. Opp. at 4. That allegation is not in the FAC and therefore cannot be considered. Even if it were, alleging that Pure Energy has reported in regulatory filings that it has a relationship with PECO would not allow the Court reasonably to infer that PECO and Pure Energy are the same company.

is referring to itself as PECO as opposed to referring to an energy company, like Con Edison, to which it supplies electricity.

The only non-conclusory allegations that even come close to alleging that Defendant initiated the offending telephone call are the allegations that Plaintiff called the number provided in the message and reached a person who identified herself as a representative of Pure Energy. FAC ¶¶ 34–36.  The representative confirmed that she was a representative for Pure Energy, began enrolling Plaintiff in Pure Energy's services, and the call included a message stating, "Thank you for choosing Pure Energy USA."  *Id.* ¶¶ 36–37; Pl. Opp. at 6–7.  Those facts confirm that the voicemail related to Defendant, but they do not allow the Court to infer that Defendant — as opposed to a telemarketer working to drum up business for Defendant — made the call at issue.

Although Plaintiff does not have to "definitively connect" Defendant to the call, he does have to allege facts from which the Court can plausibly infer that Defendant has direct liability, even if it is also plausible that a third party made the call.  *Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 71 (E.D.N.Y. 2021).  In this case, accepting all of the well-pled allegations and drawing all reasonable inferences in Plaintiff's favor, no well-pled fact in the FAC allows the Court plausibly to infer that the message to Plaintiff came directly from Defendant.

    **2. Plaintiff Has Not Adequately Alleged that the Message Contained a Prerecorded Voice**

Defendant further argues that Plaintiff has failed to allege adequately that the voicemail he received was placed using "an artificial or prerecorded voice," as required for a private cause of action under the TCPA.  *See* Def. Mem. of Law at 18–20.  The Court agrees.

Plaintiff has not alleged sufficient facts to support an inference that the message was prerecorded.  Plaintiff has merely alleged that he received a "ringless voicemail," which "he was

easily able to determine . . . was a prerecorded message." FAC ¶¶ 29, 33.[11] But Plaintiff has not alleged any additional facts from which the Court can infer that the message was prerecorded rather than, say, the product of a live person reading from a script.[12] Although a ringless voicemail could be evidence of a prerecorded message, *see, e.g.*, *Rose v. New TSI Holdings, Inc.*, 2022 WL 912967, *2 (S.D.N.Y. Mar. 28, 2022), standing alone, it fails to meet the requisite plausibility mark. Plaintiff does not allege, for example, that the voice in the message sounded artificial, nor does he allege having received multiple messages that sounded identical. *See, e.g.*, *id.* ("Beyond alleging that he received prerecorded messages, [plaintiff] also alleges that at least two of the prerecorded messages were identical and includes a transcript of those two messages."). Although Plaintiff claims that "the same exact prerecorded message was sent to other consumers," Pl. Opp. at 4 (citing FAC ¶ 41), the other complaints on the website Plaintiff references in the FAC do not support that allegation.[13]

---

[11] Defendant correctly points out that Plaintiff's allegations in the FAC "contradict" allegations that were made in his initial complaint — specifically, that Plaintiff received a "ringless voicemail" as opposed to having received a voicemail after his telephone rang, as Plaintiff alleged in the initial complaint. *See* Def. Mem. of Law at 12, 18. Plaintiff asserts that the FAC is a product of a further unspecified "investigation," after which he amended the allegations to conform to the details learned. Pl. Opp. at 4, 10. The Court declines the invitation to strike any portion of the FAC, but notes that during oral argument on Defendant's Motion to Dismiss, Plaintiff's counsel represented that the telephone briefly rang before the call went to Plaintiff's voicemail; counsel further represented that, in his experience, a brief ring followed by a voicemail is evidence of the use of ringless voicemail technology. *See* Hearing Tr. 5:13–6:25. It is, however, equally plausible that the call simply rolled over to voicemail for some other reason; moreover, the FAC omits (and, to the extent it alleges that Plaintiff's phone never rang, directly contradicts) Plaintiff's counsel's representations during oral argument.

[12] At Plaintiff's urging during oral argument, the Court listened to a copy of the voicemail that Plaintiff produced. Although Plaintiff argued that listening to the message would prove that it was obviously prerecorded, *see* Hearing Tr. 10:23–11:15, the Court disagrees. The voicemail itself provides no indication that it was prerecorded as opposed to having been left by a caller reading from a script.

[13] The only complaint on the website that comes close to bearing out Plaintiff's allegation that other users received an identical voicemail was not identical, based on the transcription provided, and purportedly originated from an entirely different telephone number. *Compare* FAC ¶ 29 (screenshot of voicemail originating from 267-553-6297 with transcribed message from "Angela Coleman" containing two "ums"), *with id.* ¶ 41 (describing a "consumer complaint" with a similar script from "Angela Coleman" containing a single "um," which purportedly originated from 610-418-4329).

In short, Plaintiff has not alleged adequately that he received a prerecorded voice message in violation of the TCPA.

### C. Amendment[14]

Rule 15 requires courts to freely grant leave when justice requires unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff has already amended his complaint once after Defendant moved to dismiss on 12(b)(6) grounds. On December 16, 2022, the Court heard oral argument and pressed Plaintiff on whether he had additional facts that could shore up his allegations regarding Defendant's alleged control of the telephone number 267-553-6297 and that the call was a prerecorded voicemail. *See* Hearing Tr. 6:7–8:23. Plaintiff indicated that there were no additional facts on either point. *Id.* Plaintiff's counsel insisted that, in his experience, the party who initiated this call was using ringless voicemail technology. *Id.* 10:23–11:15. But counsel's speculation, even if well-founded, does not turn a possible allegation into a plausible one. In short, granting leave for Plaintiff to amend the complaint would be futile.[15]

---

14 Plaintiff did not formally seek leave to amend his complaint but requested that "[i]f the Court grants the Motion [to Dismiss], it should also grant Plaintiff leave to amend." Pl. Opp. at 16.

15 Because the Court finds that leave to amend would be futile, it need not determine whether Plaintiff adequately pled that any violation of TCPA was knowing or willful.

## III. CONCLUSION

For the foregoing reasons, Pure Energy's Motion to Dismiss is GRANTED. Plaintiff's First Amended Complaint is hereby DISMISSED with prejudice. The Clerk of Court is respectfully directed to terminate all open motions and deadlines and to close this case.

**SO ORDERED.**

**Date: February 6, 2023**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**